IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ERASTO ROMAN MERCADO <br><br> Plaintiff. <br><br> v. <br><br> HYANNIS AIR SERVICES INC., d/b/a CAPE AIR; CAPE AIR CORP.; NANTUCKET AIRLINES; and Y &Z <br><br> Defendants. | CIVIL NO. 20-_____ <br><br> ACTION FOR: DAMAGES, LABOR AND PRODUCT LIABILITY <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

**COMES NOW** Plaintiff by and through the undersigned counsel and respectfully states:

This Court has jurisdiction pursuant to: 28 USC secs. 1331, 1332, 1343, 1367; 29 USC 2601; 42 USC 1983 & 1985; and 42 USC 12101 et seq.This Court has jurisdiction over this matter as there exists a complete diversity of citizenship between the parties and plaintiff is making claims under a federal statute and the claim is in excess of seventy-five thousand dollars ($75,000.00).  Plaintiff demands a Jury Trial on all counts.

### COUNT 1:

1. Plaintiff is an adult, resident of Aguada, P.R.; his mailing address is P.O. Box 1078 Aguada, P.R. 00602.

2. This Court has supplemental jurisdiction over state law claims which are invoked herein. They are as follow: Law 100 of June 20, 1959 as amended (29 LPRA 146 et. seq.); Law 80 of May 30, 1976 as amended (29 LPRA 185); 11 LPRA 7; Law

115 of 1991(29 LPRA 194) and Articles 1802 and 1803 of the Puerto Rico Civil Code.

3. Defendant HYANNIS AIR SERVICE d/b/a CAPE AIR; (Hyannis) upon information is a for profit corporation, with its principal place of business located in Hyannis, Massachusetts, and is Plaintiff's employer.

4. Defendant Cape air Corp. (Capeair) and Nantucket Airlines (Nantucket) upon information are for profit corporations that employed Plaintiff and/or had some relationship with defendant Hyannis impacting the Plaintiff's employment. Their principal place of business is in Hyannis, Massachusetts.

5. Hyannis, Nantucket and Cape air; upon information are doing business in Puerto Rico as Cape Air, as an entity engaged in commercial aviation.

6. Defendants Y and Z are the entities which manufactured and/or distributed the passenger door for defendants Hyannis, Capeair and Nantucket aircraft; a Cessna 402 with tail number N7037E (we will address these last three Defendants as Airlines for clarification purposes).

7. The above listed defendants, through their actions and omissions violated Plaintiff's civil rights and caused him severe physical injury, emotional and psychological damages as well as mental anguish through their violations of federal and state law and for which Plaintiff should be indemnified.

8. Plaintiff had the position of 'Cross train' agent at the Eugenio Maria de Hostos Airport at the Mayaguez, Puerto Rico base for defendants Airlines. Plaintiff began his employment with Airlines in 2005.

9. On April 8, 2017 in the afternoon Plaintiff was receiving flight number thirty-nine (39)from San Juan.  At the time Plaintiff proceeded as he normally would and had done so in the past; to open the door to provide for the passengers to deplane.

10. Upon opening the exit door, which consists of a top and bottom portion; all of a sudden and without any warning the top portion of the exit door failed to stay in place, striking Plaintiff in the head and causing a severe trauma which left him disoriented for a few minutes and with a strong headache.

11. The blunt trauma to this day continues to affect him; and has severely impacted his overall health.

12. After the incident, Mr. Alberto Roman, Plaintiff's supervisor instructed him to draft an OSHA report but, did not instruct him to draft a workman's compensation report.

13. Plaintiff requested paperwork from his employer to submit to the 'Fondo' (Workman's compensation) to report himself for treatment but, defendants Airlines refused.

14. Plaintiff complained to his employer of the health-risk posed by the faulty door.

15. On the same day of the incident, Plaintiff sought treatment on his ownat San Antonio Hospital in Mayaguez where he was diagnosed with dizziness, hematoma and contusion of the forehead and acute post-traumatic headache as a result of the impact caused by the door. Upon discharge he was prescribed several medications.

## COUNT II:

16. Plaintiff herein reasserts and realleges all his previous allegations.

17. Plaintiff, in complying with his supervisor and his employer's instructions continued to report to work while still suffering from headaches, neck pain, hand numbness and tingling sensations, all of which he complained to his supervisor and employer.

18. Plaintiff continued to work for several months while in pain and with the aforementioned symptoms and while taking over the counter medications to deal with his ailments. Even though he complained to his employer he was not directed to Fondo for treatment in connection with the injuries by his employer.

19. Plaintiff was unable to continue to work under said conditions and in October 2017 he requested from one of his supervisors, Mr. Jose Calo, who was defendants Airlines' Caribbean Manager, to provide him with the necessary paperwork to report himself to the 'Fondo'.

20. Mr. Calo and his employer again told him they would not provide him with the employer's paperwork to open a claim at Fondo since he had a medical plan, and as such he should use it.

21. Plaintiff was of the impression that he needed his employer's documentation to report to the Fondo.

22. Due to Defendants Airlines refusal for Plaintiff's treatment, he consulted with a chiropractor.

23. The chiropractor, Dr. Siro Gutierrez, ordered an MRI which showed among other things severe damage to Plaintiff's spinal canal; as such he recommended that

Plaintiff report himself to Fondo in view of the history of his condition and severity of the symptoms.

24. On November 29, 2018 Plaintiff had his initial visit at the Fondo office in Mayaguez.

25. As a result of the blunt trauma suffered by Plaintiff due to the faulty door, he had to undergo extensive medical care at Fondo.

26. For the remainder of 2018 and into 2019 Plaintiff received treatment at Fondo which continues today.

27. The treatment received by Plaintiff included but is not limited to several diagnostic exams, physical therapies, psychiatric therapies, spine surgery evaluation, and an anterior cervical discectomy and fusion with inter body graft and anterior plating on February 2019.

28. Once under treatment at Fondo the Plaintiff is afforded all protections under the law for such treatments which include at home rest and being free from retaliation for receiving medical treatment or for reporting himself to Fondo.

29. Plaintiff continues to this day to receive treatment for his injuries and for the actions and omissions of all the defendants.

## COUNT III

30. Plaintiff herein reasserts and realleges all his previous allegations.

31. Defendants Airlines acted contrary to law when they refused to provide Plaintiff the required paperwork for the Fondo, when he requested it.

32. Defendants Airlines exacerbated the Plaintiffs condition and caused him new injuries by forcing him to continue to work, all the while they were aware of the serious injury he suffered.

33. Defendants Airlines acted contrary to law and failed to afford Plaintiff the proper protections.

34. Defendants Airlines, on June 2019, wrongfully discharged plaintiff from his employment, retroactively to May 2019 and less than three months after he underwent an anterior cervical discectomy and fusion with inter body graft and anterior plating and while he was still recovering from the surgery.

35. Airlines retaliated against Plaintiff by terminating him after he sought treatment for his injuries at Fondo, in violation of federal and local statutes.

36. Defendants Airlines retaliated against Plaintiff for making an OSHA claim in connection with the faulty door.

37. Airlines discriminated against Plaintiff due to his medical condition by terminating him and in violation of federal and local statutes.

38. The actions and omissions of defendants Airlines, against Plaintiff are all in violation of: OSHA protections and standards; FAA regulations and standards; Law 100 of June 20, 1959 as amended (29 LPRA 146 et. seq.); Law 80 of May 30, 1976 as amended (29 LPRA 185); 11 LPRA 7; Law 115 of 1991 (29 LPRA 194) and Articles 1802 and 1803 of the Puerto Rico Civil Code.  In addition to 42 USC 1983 & 1985; and 42 USC 12010 et seq.

39. Defendants Airlines also violated the law by not providing Plaintiff leave under the FMLA (29 USC 2601).

40. Defendants Airlines are also responsible for the actions and omissions committed by Plaintiffs supervisors pursuant to article 1803 of the Puerto Rico Civil code.

41. Defendants airlines, through their actions and omissions and those of its employees have caused severe physical and emotional harm to Plaintiff, as well as past, present, future, and permanent economic injury to Plaintiff.

42. Plaintiff received his Right to Sue letter from EEOC on March 12, 2020.

## COUNT IV:

43. Plaintiff herein reasserts and realleges all his previous allegations.

44. The aircraft door which injured Plaintiff was produced, fabricated, manufactured, and distributed by Defendants Y and Z.

45. Defendants Y and Z produced, fabricated, manufactured, and distributed an airplane part and/or door which was not fit for commerce or use.

46. Defendants Y and Z through their actions and omissions caused Plaintiff to be injured, pursuant to articles 1802 and 1803 of the Puerto Rico Civil code and all applicable local and federal statues including OSHA and FAA regulations and standards.

47. Defendants Y and Z through their actions and omissions caused extensive, serious, and permanent injuries to Plaintiff including severe physical and emotional harm to Plaintiff, as well as past, present, future, and permanent economic injury to Plaintiff.

## COUNT V:

48. Plaintiff herein reasserts and realleges all his previous allegations.

49. The actions and omissions of the defendants have been so extreme that they merit the imposition of additional special and punitive damages.

50. Defendants have unfairly treated and humiliated Plaintiff and caused him damages, emotional distress, costs, economic hardship, monetary losses and he has required medical and psychiatric treatment.

51. Defendants' actions and omission were contrary to law and were the proximate cause of the damages caused to the plaintiff.

52. Plaintiff has been left without pay illegally and without any justification.

53. Plaintiff is entitled to a "mesada" (separation pay) following his illegal discharge.

54. As a result of the foregoing actions and omissions of defendants Plaintiff has suffered extensive irreparable damages which include but are not limited to the following:

    a. Loss of income.

    b. Loss of future income.

    c. Loss of capacity to earn income.

    d. Economic ruin.

    e. Credit damage for failure to meet financial obligations.

    f. Due to the lack of sufficient income to cover such basic needs as food and shelter, Plaintiff had to sell personal items such as jewelry and appliances.

    g. Failure to meet utility bills, which have resulted in additional debts and the potential of losing these services.

    h. Plaintiff has had to and continues to request loans from family and friends to meet the most basic of needs such as paying for food and utilities.

  i. Harassing calls from debt collectors.

  j. Severe mental anguish, pain and suffering, depression, physical damages and exacerbated medical conditions.

  k. Medical, legal, and financial expenses.

**WHEREFORE**, it is respectfully requested that the Court grant the Plaintiff's complaint and grant relief for compensatory, economic, together with costs, legal expenses, fees, and special/punitive damages, along with any other remedy deemed justified.

Respectfully submitted,

GS LAW OFFICES P.C.
Attorneys for Plaintiff

Dated: May 13, 2020  By: /s/ Eugenio Géigel-Simounet, Esq.
  Eugenio W.A. Géigel-Simounet, Esq.
  U.S.D.C. No. 220601
  PO Box 250268
  Aguadilla, PR  00604
  Tel: (787) 890-4520 Fax 787-890-1010
  egeigel@gs-lawoffices.com