IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ERASTO ROMAN MERCADO,

Plaintiff,

v.

HYANNIS AIR SERVICES, INC., et al.,

Defendants.

CIVIL NO. 20-1228 (CVR)

**OPINION AND ORDER**

**INTRODUCTION**

The present case involves an accident that Plaintiff Erasmo Román Mercado ("Plaintiff") suffered while working for co-Defendant Hyannis Air Service, Inc. d/b/a Cape Air/Nantucket Airlines ("Hyannis"). Plaintiff was employed as a ramp agent at the airport in Mayaguez, Puerto Rico, and alleges he was injured after a faulty exit door of a Cessna 402 aircraft struck his head as he attempted to open it. Plaintiff brings forth a host of violations to state employment laws, including unjust dismissal and retaliation, and seeks compensatory and punitive damages therefrom. He also brings a product liability claim against co-Defendant Textron Aviation, Inc., ("Textron"), averring it manufactured an aircraft that was not fit for commercial use.

Before the Court now is Textron's "Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State Valid Claims for Relief, of in the Alternative, Motion for a More Definite Statement." (Docket No. 91). Textron's request for dismissal is two-fold. First, it posits that the Court lacks both general and specific jurisdiction over Textron. Second, it argues that even if the Court had jurisdiction, Plaintiff's claims would be barred

by Puerto Rico's one-year statute of limitations and do not relate back.   If the Court

chooses not to dismiss the claims on those grounds, Textron proffers that the request for

punitive damages should be dismissed because they are not recoverable under Puerto

Rico law.   Finally, it argues Plaintiff should be required to replead the Second Amended

Complaint because it is an impermissible "shotgun pleading"[1] which requires a more

definite statement.   Textron supported its Motion with the Affidavit of Sherry L. Fleming

("Ms. Fleming"), Textron's Assistant Secretary and Corporate Governance Manager.

Plaintiff's Opposition concedes that the Court may lack general jurisdiction over

Textron, but argues that it has specific jurisdiction instead.   Plaintiff ascertains that

Cessna has a "Pilot Center" at the Isla Grande Flying School in Puerto Rico that could give

the Court jurisdiction over Textron, and asks the Court to allow for discovery to better

determine the scope of Textron's global businesses.  (Docket No. 103).

Textron filed a Reply arguing that the Cessna "Pilot Center" is part of a flight school

which uses Cessna-approved training systems for Cessna aircraft.  It only uses Cessna

logos in its marketing for pilots for the program and to identify prospective purchasers of

new or pre-owned Cessna aircraft in exchange for a finder's fee.   Pursuant to the contact

between the parties, the relationship is that of independent contractor, nothing more.

Textron claims that this relationship does not make the school an authorized dealer of

Cessna aircraft or service center and does not provide the elements necessary to establish

specific jurisdiction, to wit, a nexus between the claims asserted and Textron's conduct,

or purposeful availment.  (Docket No. 110).

---

[1] Meaning it impermissibly lumps together the employment allegations brought against Hyannis and the product liability allegations against Textron.

For the reasons explained below, Textron's Motion to Dismiss is GRANTED.

## STANDARD

Federal Rule of Civil Procedure 8(a) requires plaintiffs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A "short and plain" statement needs only enough detail to provide a defendant with " 'fair notice of what the … claim is and the grounds upon which it rests.' " Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965 (2007); see also Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197 (2007) ("Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement….' Specific facts are not necessary.").  In order to "show" an entitlement to relief, a complaint must contain enough factual material "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." See Twombly, 550 U.S. at 555, 127 S.Ct. 1955.

When addressing a motion to dismiss under Rule 12, the court must "accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiffs." Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48-49 (1st Cir. 2009). Under Twombly, 550 U.S. at 555, however, a plaintiff must "provide the grounds of his entitlement [with] more than labels and conclusions." See also Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).   A plaintiff is now required to present allegations that "nudge [his] claims across the line from conceivable to plausible" in order to comply with the requirements of Rule 8(a). Id. at 570; see, e.g. Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937 (2009).

Textron filed a Rule 12(b)(2), which requires the Court to apply the "*prima facie* standard." See Sawtelle v. Farrell, 70 F.3d 1381, 1386 n.1 (1st Cir. 1995).   When a defendant challenges personal jurisdiction, the plaintiff bears the burden of establishing it exists.  Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015).  To meet the *prima facie* showing of jurisdiction, a plaintiff cannot rest only on the pleadings but must "proffer[ ] evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction."  Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 675 (1st Cir. 1992).

Plaintiff posits that because evidence outside pleadings has been submitted, the Court must treat the motion as a summary judgment motion and permit discovery insofar as he cannot controvert the information contained in the Affidavit.  At this juncture, however, no conversion of the motion is required.  Plaintiff must simply "proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016). The Court, however, "is not acting as a factfinder; rather, it accepts properly supported proffers of evidence by a plaintiff as true and makes its ruling as a matter of law."  United Elec. Radio and Mach. Workers of America v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993).

## STATEMENT OF FACTS

The Court accepts Plaintiffs' allegations as true for purposes of the Motion to Dismiss.  Ponsa-Rabell v. Santander Sec., LLC, 35 F.4th 26, 30 (1st Cir. 2022); O'Brien v. Deutsche Bank Nat'l Tr. Co., 948 F.3d 31, 35 (1st Cir. 2020).

Plaintiff, a Hyannis employee since 2005, suffered an injury in the course of his employment while opening an aircraft door.  The aircraft was a Cessna 401 airplane, with

tail number N7037E.[2]  The door struck Plaintiff in the head, causing severe trauma which left him disoriented and with a strong headache.  On that same day, Plaintiff went to San Antonio Hospital in Mayaguez, where he was diagnosed with dizziness, hematoma, a contusion of the forehead and acute post-traumatic headache as a result of the impact. Plaintiff's supervisor instructed him to draft an OSHA report but not a workmen's compensation report.

Plaintiff avers he continued to suffer from headaches, neck pain, hand numbness and tingling sensations, all of which he complained of to his supervisor, but his complaints were ignored.  He further asserts that he was not allowed to go to the State Insurance Fund for treatment and was told instead to use his medical insurance plan for his treatment.   Plaintiff believed he needed documentation from his employer to report to the State Insurance Fund to receive treatment.

Plaintiff then went to a chiropractor and an MRI was done, which showed severe damage to his spinal canal.  On November 2, 2018, Plaintiff reported to the State Insurance Fund where he received treatment until July 23, 2020.  In between, in February 2019, Plaintiff underwent an anterior cervical discectomy and fusion with inter body graft and anterior plating.

Plaintiff contends that he was never afforded a reasonable accommodation and was denied appropriate treatment for his condition.  In June 2019, Hyannis discharged Plaintiff because his 12-month employment reserve period expired and he was unable to return to work.   Plaintiff argues his dismissal was pretextual since he was still under the

---

[2] Although the second Amended Complaint lacked this information, the first two Complaints specifically mentioned it. Plaintiff was therefore always cognizant as to the specific identifying traits of the aircraft.  This will prove to be relevant for the Court's analysis of Textron's arguments.

State Insurance Fund's treatment, and claims wrongful discharge, discrimination, and retaliation by Hyannis.

As to Defendant Textron, Plaintiff asserts that it manufactured and placed in the stream of commerce the faulty airplane which was not fit for commercial use.

## LEGAL ANALYSIS

The following is a summary of the timeline of the facts of this case.

<u>April 8, 2017</u> - The accident in the case at bar occurred.

<u>May 13, 2020</u> - Plaintiff filed the original Complaint. At that time, Plaintiff also asserted a product liability claim in Count IV, alleging that Defendants "Y and Z" are entities which manufactured or distributed the passenger door of the aircraft in question, described as a "Cessna 402 with tail number N7037E" (Docket No. 1, ¶6).

<u>June 17, 2021</u> - Plaintiff filed the First Amended Complaint, asserting that "Defendants X, Y and Z" manufactured or sold the passenger door/part for the aircraft in question. (Docket No. 21).

<u>March 19, 2022</u> - Plaintiff filed a "Motion for Leave to Amend Complaint Pursuant to F. R. Civ. P. 15(a)(2)", where he stated that the First Amended Complaint still contained defendants under fictitious names, the manufacturers of the aircraft door and/or parts, named as Defendants X, Y and Z, because they were still unknown to him or his counsel. The motion averred that it was not until July 30 2021, as part of its Rule 26 disclosures, that co-Defendant Hyannis informed Plaintiff that the manufacturer, distributor, and/or seller of the aircraft door was Textron. (Docket No. 50).

<u>May 2, 2022</u> - The Court granted leave to amend the Complaint to add Textron as a defendant in the case.  (Docket No. 63).

<u>May 11, 2022</u> - Plaintiff filed the Second Amended Complaint. (Docket No. 65).

<u>August 23, 2022</u> - Textron was served with the Summons and Second Amended Complaint. (Docket No. 89).

## A.  Lack of Jurisdiction.

When a defendant files a motion to dismiss for lack of personal jurisdiction under the *prima facie* standard, "it is plaintiff's burden to demonstrate the existence of every fact required to satisfy both the local forum's long-arm statute and the Due Process Clause of the Constitution." <u>United States v. Swiss Am. Bank, Ltd.</u>, 274 F.3d 610, 618 (1st Cir.2001).

Puerto Rico's long-arm statute allows Puerto Rico courts to exercise jurisdiction over a non-resident defendant when that person: (1) "[t]ransacted business in Puerto Rico personally or through an agent"; or (2) "participated in tortuous acts within Puerto Rico personally or through his agent." P.R. Laws Ann. tit. 32, App. III, R. 4.7;  <u>Rodríguez v. Fullerton Tires Corp.</u>, 937 F.Supp. 122, 124 (D.P.R. 1996).   It has long been held that Puerto Rico's long-arm statute stretches "'up to the point allowed by the Constitution'", so the Court focuses on constitutional elements to determine whether it has jurisdiction. <u>Benítez-Allende v. Alcan Aluminio do Brasil, S.A.</u>, 857 F.2d 26, 29 (1st Cir. 1988) (*quoting* <u>Indus. Siderúrgica v. Thyssen Steel Caribbean, Inc.</u>, 114 D.P.R. 548, 558 (1983)).

The due process inquiry requires the existence of either general or specific jurisdiction, and that there be "minimum contacts" between the defendant and the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair

play and substantial justice.'" <u>Int'l Shoe Co. v. State of Wash</u>., 326 U.S. 310, 316, 66 S.Ct. 154 (1945); <u>Milliken v. Meyer</u>, 311 U.S. 457, 463, 61 S.Ct. 339 (1941). Thus, a court may exercise general jurisdiction over "a defendant who has maintained a continuous and systematic linkage with the forum state," and may exercise specific jurisdiction over a cause of action that "relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum." <u>Phillips Exeter Acad. v. Howard Phillips Fund</u>, 196 F.3d 284, 288 (1st Cir. 1999).

Textron's argument is that Plaintiff has not pled sufficient facts to establish general or specific jurisdiction. The Second Amended Complaint alleges that Textron "produced, manufactured, distributed and sold into interstate commerce and placed in the stream of commerce" the airplane, which eventually found its way to Puerto Rico where its door allegedly failed several decades later. (Docket No. 65, ¶ 53). Textron argues this is insufficient as a matter of law to find it liable. It further avers that the Second Amended Complaint lacks allegations as to the application of the Puerto Rico long-arm statute and fails to point to any of Textron's alleged contacts with Puerto Rico that would make it subject to the Court's jurisdiction. Textron thus concludes that the Second Amended Complaint does not plead sufficient facts to support the Court's exercise of personal jurisdiction over it.

Plaintiff contends in his Opposition that it cannot rebut the information contained in the Affidavit accompanying Textron's Motion and instead posits that it must conduct discovery to be able to properly contradict that information and to ascertain Textron's activities globally. Plaintiff concedes that the Court may not have general jurisdiction over Textron, but argues instead it has specific jurisdiction.

After careful review, the Court agrees with Textron.

1.  General jurisdiction.

General jurisdiction exists when the defendant has engaged in "continuous and systematic activity, unrelated to the suit, in the forum state." United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992).  For a court to have general jurisdiction over an out-of-state defendant, contacts with the forum state must be considerably more extensive than the "minimum contacts" that are required in order to find specific jurisdiction.  Donatelli v. Nat'l Hockey League, 893 F.2d 459, 463 (1st Cir. 1990).

As to corporations, the Supreme Court has clarified that the "paradigm forum for the exercise of general jurisdiction for a corporation [is] ... one in which the corporation is fairly regarded as at home." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924, 131 S.Ct. 2846 (2011).  A corporation is considered "at home" for purposes of general jurisdiction by looking at its place of incorporation and its principal place of business.  Id.  Even "the casual presence of a corporate agent or even his conduct of single or isolated items of activities in a state on the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there." Int'l Shoe Co., 326 U.S. at 317, 66 S.Ct. 159.

Textron accompanied its petition for dismissal with an Affidavit from Ms. Fleming where she asserts that Textron is a Kansas corporation with a principal place of business in Kansas.  Cessna Aircraft Company ("Cessna"), which manufactured the airplane, became Textron's subsidiary in 2014 and was later merged with Textron.  Cessna too, was at all times a Kansas corporation with its principal place of business in Wichita, Kansas.

Under the Goodyear Dunlop test, these factors make Textron not "at home" in Puerto Rico. (Docket No. 91, Exhibit A, ¶¶ 4-6).

In further support of Textron's position, Ms. Fleming also contends in her Affidavit the following: Textron designs and manufactures general aviation aircraft in Kansas and has never designed or manufactured general aviation aircraft or any component of such aircraft in Puerto Rico. (Id., ¶7). Cessna did not design or manufacture general aviation aircraft in Puerto Rico. (Id., ¶8). Cessna designed and manufactured the aircraft in question and its components in Kansas. (Id., ¶9). Neither Cessna nor Textron brought the aircraft object of this case into Puerto Rico or caused it to be present in Puerto Rico at the time of the accident. (Id., ¶10). Textron does not have a service center in Puerto Rico. (Id., ¶12). Textron does not have an office or employees in Puerto Rico. (Id., ¶13). Textron does not own or lease property in Puerto Rico. (Id., ¶14). Textron is not registered or authorized to do business in Puerto Rico and does not maintain a registered agent for service of process in Puerto Rico. (Id., ¶15). Textron has not consented to jurisdiction in Puerto Rico. (Id., ¶16). Textron does not utilize a network of distributors or retailers in the sale of its aircraft in Puerto Rico. (Id., ¶17). The aircraft in question was sold by Cessna in 1981 to AVICONORTH, LTD., in Illinois. (Id., ¶18). Textron does not maintain bank accounts in Puerto Rico. (Id., ¶19). Textron has not targeted the Puerto Rico market for specific advertising to Puerto Rico residents, has not designed a product specifically for the Puerto Rico market, and has not sought to serve the Puerto Rico market in specific, targeted ways. (Id., ¶20). Textron has located no records indicating it was involved in any maintenance or repair of the aircraft in question in Puerto Rico. (Id., ¶21). Textron has

not established any customer support services physically located in Puerto Rico for Cessna aircraft. (Id., ¶22).

It is evident from these statements that the Court holds no general jurisdiction over Textron, and Plaintiff can point to nothing in the Second Amended Complaint to evidence any intent by Textron to establish the systematic ties with Puerto Rico that the caselaw requires. Quite the opposite, Ms. Fleming attests that Textron does not generally conduct business in Puerto Rico and has no service center, office or employees here, facts which Plaintiff has not rebutted. Indeed, in his opposition, Plaintiff admits that "the exercise of general jurisdiction over defendant Textron may not be warranted." (Docket No. 103, p. 9). Therefore, Plaintiff has failed to establish the systematic ties necessary for the Court to have general jurisdiction over Textron.

2. Specific jurisdiction.

Textron also argues that the Court lacks specific jurisdiction of it, as it has no minimum contacts with Puerto Rico and Plaintiff has failed to demonstrate that Textron meets said requirements. In a general fashion, and in what seems to be a fishing expedition, Plaintiff argues in his Opposition that Cessna is an international corporation, and that it is entitled to discovery regarding the extent of its reach worldwide due to "the nature if its business", that is to manufacture and sell airplanes for world-wide use. As such, Plaintiff avers that Cessna should expect to be sued "in any place in the world." (Docket No. 103, p. 15). To this effect, Plaintiff claims the Cessna "Pilot Center" in Puerto Rico raises questions about whether or not Textron meets the jurisdictional elements, and he requests leave for discovery to ascertain the extent of Cessna and Textron's presence in Puerto Rico and elsewhere.

Textron's Reply clarifies this matter indicating that the relationship between Cessna and the flying school is that of an independent contractor, and proffers again that Plaintiff, who carries the burden of establishing jurisdiction, has failed to do so as he has not proven a nexus between Textron's conduct and Plaintiff's claims, or any purposeful availment by Textron of Puerto Rico's laws. Once again, the Court sides with Textron.

Under the Due Process clause, a nonresident defendant may be subjected to jurisdiction within a forum only if it has certain "minimum contacts" with that forum. Int'l Shoe Co., 326 U.S. at 316, 66 S.Ct. 158. Due process "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 567 (1980).

The First Circuit examines specific jurisdiction requirements into a three-part test, relatedness, purposeful availment, and reasonableness. See Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 135 (1st Cir. 2006). A plaintiff bears the burden of satisfying all three elements in order to support a finding of specific jurisdiction. Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 60 (1st Cir. 2002); A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 59 (1st Cir. 2016). The Court finds Plaintiff has failed to meet this burden.

To satisfy the relatedness element, Plaintiff must show that a nexus exists between his claim and Textron's forum-based activities. In other words, Plaintiff must establish that his claims ... " 'must arise out of or relate to the defendant's contacts with the forum.'" Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct., ___U.S. ___, 141 S. Ct. 1017, 1025 (2021)

_____

(*quoting* Bristol-Myers Squibb Co. v. Superior Ct., ___U.S. ___, 137 S. Ct. 1773, 1780 (2017)).

Plaintiff points to the Ford Motor Company case for the proposition that this Court may exercise specific jurisdiction over Textron.  The Ford court, however, found that the Ford company was subject to jurisdiction in Montana and Minnesota under a totally different set of circumstances.  For instance, in Montana, the company was found to have thirty-six (36) dealerships in the state, it sold cars and parts to Montana residents and provided services for recall, replacement and repair services in that state.   Ford additionally had television and radio ads, billboards, direct mail and other advertising targeted specifically to Montana's customers, therefore demonstrating purposeful availment of the laws of Montana.   A similar case was made as to Ford's ties with Minnesota. [3]  In other words, the court found that Ford had "cultivated a product" in those states, and found a "strong relationship among the defendant, the forum and the litigation".  Id at 1020.  For this reason,  it held that the plaintiffs' claims arose out of Ford's contacts with each state, and the courts had jurisdiction over Ford in both states.

A totally different set of facts is present in this case. Through Ms. Fleming's Affidavit, Textron has established that it does not have a service center, offices, or employees in Puerto Rico.  Textron designs and manufactures its aircraft in Kansas and never designed or manufactured any aircraft in Puerto Rico. Cessna, which was acquired by Textron in 2014, has likewise never designed or manufactured any aircraft in Puerto

_____

[3] Ford was found to have even more dealerships in Minnesota than in Montana, a whopping eighty-four (84).

Rico, including the one in question.  All the designs and the manufacturing of Cessna aircraft and its components are done in the state of Kansas.

Plaintiff's products liability claims cannot relate to any acts of Textron in this forum as it has no personnel, offices and did not manufacture or maintain any aircraft here, not even the subject aircraft.  Textron did not deliberately extend its business into Puerto Rico's market, target this market with any specific advertising for local residents, or serve this market in specific, targeted ways.  Textron has additionally established that the aircraft involved in the accident in the present case was originally sold over 40 years ago, in 1981, to a company located in Wheeling, Illinois, and had nothing to do with the plane's presence in Puerto Rico at the time of the accident.

As candidly pointed out by Textron, there is simply no relationship whatsoever between the flying school and Plaintiff's injury, and Textron's very limited relationship with this entity is insufficient to demonstrate the required nexus.  Plaintiff has not evidenced that his claims arose out of, or are related, to the flying school or its flight training.  The Court additionally notes that the contract between the school and Textron was signed in 2020, four (4) years after the accident in question.  A contract that was signed in 2020 is not relevant to determining jurisdiction for an accident that occurred in 2017.  See Cambridge Literary Properties, Ltd. v. W. Goebel Porzellanfabrik G.m.b.H. & Co. Kg., 295 F.3d 59, 66 (1st Cir. 2002) ("for purposes of specific jurisdiction, contacts should be judged when the cause of action arose").

In sum, Plaintiff has failed to establish that there is any relationship between Plaintiff's products liability claims and Textron's non-existent contacts with Puerto Rico. There is simply no relatedness between the accident in the case at bar and Textron.  See

Swiss Am. Bank, Ltd., 274 F.3d at 621 (noting that "there can be no requisite nexus between the contact and the cause of action if no contacts exist."). As it is Plaintiff's burden to prove each of the three elements and he has failed on the first one, the Court may end its inquiry here. See Id., at 625 (failure to establish relatedness ends the jurisdictional inquiry). However, in the interest of thoroughness, the Court moves on to the second element.

To prove specific jurisdiction, Plaintiff must also demonstrate that Textron purposefully availed itself of the privilege of conducting activities within Puerto Rico, thus invoking the benefits and protections of Puerto Rico's laws. See Bluetarp Fin., Inc. v. Matrix Constr. Co., 709 F.3d 72, 82 (1st Cir. 2013). The inquiry is meant to ensure that a defendant will not be subjected to personal jurisdiction based on "random, fortuitous, or attenuated contacts" with the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174 (1985).

In addition to a defendant's specific attempts to target the forum state, a defendant's "regular flow or regular course of sales' in the [forum]" may also demonstrate purposeful availment. Plixer Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1, 10 (1st Cir. 2018). The mere placement of a product into the stream of commerce with the awareness that it could end up in a forum state, without more, is insufficient to show purposeful availment, yet "[a]dditional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State." Asahi Metal Indus. Co. v. Superior Ct., 480 U.S. 102, 112, 107 S.Ct. 1026 (1987). In sum, the contacts "must show that the defendant deliberately reached out beyond its home -- by, for example, exploiting a market in the forum State or

entering a contractual relationship centered there." <u>Ford Motor Co.</u>, 141 S. Ct. at 1025

(*quoting* <u>Walden v. Fiore</u>, 571 U.S. 277, 285, 134 S.Ct. 1115 (2014)).

Once again, Plaintiff has come up short on this element.  Plaintiff only alleges that

Textron manufactured the aircraft in question and placed it in the stream of commerce,

and the aircraft eventually found its way to Puerto Rico.  Under <u>Asahi</u>, this conduct by

itself  is not enough to demonstrate purposeful availment, and Plaintiff points to nothing

on the record that may help him to establish this element.   <u>Asahi</u> clearly spells this out,

holding that "a defendant's awareness that the stream of commerce may or will sweep the

product into the forum State does not convert the mere act of placing the product into the

stream into an act purposefully directed toward the forum State." <u>Asahi</u>, 480 U.S. at 112.

As previously discussed, Textron does not have a service center, office, bank

accounts or employees in Puerto Rico.  Textron has no customer support or service

facilities in Puerto Rico.  The fact that a flying school uses Cessna aircraft to train pilots,

by itself, is not sufficient to create purposeful availment.  <u>Bristol-Myers Squibb Co</u>., 137

S. Ct. at 1783 (finding that a defendant's relationship with a third party was not enough

to find jurisdiction).  In other words, Textron does not have a "strong relationship" with

Puerto Rico and has not "cultivated a product"  or exploited this market, as the <u>Ford</u> court

found.

Additionally, it is undisputed that Cessna sold the aircraft in question after it was

manufactured in 1981 to a company in Illinois.  Many years later, Hyannis acquired the

aircraft and brought it to Puerto Rico, where it was being used by that entity at the time

of the accident.  Neither Textron nor Cessna brought the aircraft in question to Puerto

Rico or caused it to be present here at the time of the accident.  As argued by Textron,

Hyannis' unilateral activity of using the subject aircraft to fly passengers to Puerto Rico years after it was manufactured may certainly demonstrate purposeful availment by Hyannis, but not as to Textron.

In sum, like the relatedness inquiry, Plaintiff's argument for purposeful availment finds no support on this record.

Finally, as to the reasonableness element, the Court must consider the five so-called "gestalt" factors, to wit: (1) the defendant's burden of appearing in Puerto Rico; (2) Puerto Rico's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies. Knox v. MetalForming, Inc., 914 F.3d 685, 694 (1st Cir. 2019); Burger King, 471 U.S. at 477, 105 S.Ct. 2174. These factors are intended "to aid the court in achieving substantial justice, particularly where the minimum contacts question is very close." Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 717 (1st Cir. 1996); see also Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 210 (1st Cir. 1994) ("[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction.").

As is clear from the preceding analysis, this is not one of those "very close" cases. The Court finds that Plaintiff has not met his burden as to the first two factors to show that the Court has personal jurisdiction over Textron, so without going into the merits of this third element, Plaintiff's claim as to reasonableness must necessarily fail.

For all the aforementioned reasons, the Court finds it does not have personal jurisdiction over co-Defendant Textron.

### B. Claims are time-barred.

Textron's second reason for dismissal is that even if the Court had jurisdiction, the case is time-barred and does not relate back under Fed. R. Civ. P. 15.  The accident in this case occurred on April 8, 2017, and it was not until May 13, 2020 that the Original Complaint was filed, which did not name Textron as a defendant but identified the airplane as a "Cape Air aircraft", a "Cessna 402 with tail number N7037E".  (Docket No. 1, ¶6).  On March 19, 2022, Plaintiff filed for leave to amend the complaint, and stated that on July 30 2021, as part of its Rule 26 disclosures, co-Defendant Hyannis informed him that the manufacturer, distributor, and/or seller of the aircraft door for the above-mentioned aircraft was Textron Aviation Inc.

Textron's position is that Plaintiff did not sue Textron until approximately five (5) years after the incident yet had the opportunity to timely find out who had manufactured the aircraft.  Instead of doing the required due diligence to preserve his claims against Textron and put the company on notice, Plaintiff chose to sue only his employer despite having ample opportunity to find out the manufacturer from the information it had, to wit, the make and model of the aircraft and the tail number.  Thus, Plaintiff waited over five (5) years after the accident to amend the complaint to bring Textron to the case, and did not serve Textron until five (5) years and four (4) months (or sixty-four months) after the accident.  Textron posits the case is time-barred.

 Plaintiff's position is that it was not until Hyannis' Initial Disclosures on July 30 2021, that Plaintiff learned of Textron's identity, and for this reason, the delay is justified.

He also argues that he is "not a legal scholar" to have known Textron was the successor in interest of Cessna, and that his tardiness in finding out Textron was allegedly responsible must be excused because he is a lay person and was injured. The Court cannot agree.

Under Puerto Rico law, Tort claims under Article 1802 "are subject to the one-year statute of limitations" provided for in Article 1802 of the Civil Code, P.R. Laws Ann. tit. 31, § 5141.[4] Tokyo Marine and Fire Ins. Co., Ltd. v. Pérez & Cia., 142 F.3d 1, 3 (1st Cir. 1998). A cause of action under Article 1802 accrues and the prescriptive period begins to run when the injured party knew of should have known of the injury and of the likely identity of the tortfeasor. The injured person must have both "notice of her injury and knowledge of the likely identity of the tortfeasor" in order for the period to begin to run. Santos-Espada v. Lugo, 312 F.3d 1, 3 (1st Cir. 2002) (citing Tokyo Marine, 142 F.3d at 3).

Notice of the cause of action occurs "when there exist some outward or physical signs through which the aggrieved party may become aware and realize that [they have] suffered an injurious aftereffect, which when known becomes a damage even if at the time its full scope and extent cannot be weighed." Torres v. E.I. Dupont de Nemours & Co., 219 F.3d 13, 18-19 (1st Cir. 2000). Therefore, "[t]he clock starts ticking 'when the injured party knew or should have known of the injury and of the likely identity of the tortfeasor.'" López-Rivera v. Hosp. Auxilio Mutuo, Inc., 290 F. Supp. 3d 137, 143 (D.P.R. 2017) (quoting Tokyo Marine, 142 F.3d at 3); Corey Lanuza v. Medic Emergency Specialties, Inc., 229 F.Supp.2d 92, 99 (D.P.R. 2002) ("[S]ubjective reasonable diligence will determine the accrual date.").

---

[4] The Puerto Rico Civil Code was amended in 2020. This case arose while the old Code was still in effect. For this reason, the Court analyzes the issues in this case under the provisions of the old Code. See P.R. Laws Ann., tit. 31 §11720.

In cases where a tort claim is filed after the one-year statutory term, it is the plaintiff who bears the burden of proving timeliness by establishing that he lacked the necessary knowledge or imputed knowledge to timely file his claims.  Santos-Espada, 312 F.3d at 4 (*citing* E.I. Dupont De Nemours & Co., 219 F.3d at 19).  A plaintiff is required to perform due diligence to ascertain the identity of an alleged tortfeasor, which requires the party to be active in performing reasonable efforts to find out the information.  See Santos-Espada, 312 F.3d at 4; Quintana Lopez v. Liggett Grp., Inc., 336 F.Supp.2d 153, 157 (D.P.R. 2004).  There is no higher bar for a non-lawyer as Plaintiff argues.  What is required is the normal amount of diligence a prudent, normal person would exercise.  "It is known that under Puerto Rico law, 'due diligence does not mean waiting for answers to fall from the sky, but rather requires reasonable, active efforts to seek answers and clarify doubts.' " Id. (*quoting* Alicano Ayala v. Philip Morris, Inc., 263 F.Supp.2d 311, 317 (D.P.R.2003)).

There is no doubt that Plaintiff in this case had notice of the cause of action since the day the accident happened, on April 8, 2017, as the Second Amended Complaint avers that he had "severe trauma which left him disoriented for a few minutes and with a strong headache", and "on the same day of the incident, Plaintiff sought treatment on his own at San Antonio Hospital in Mayaguez where he was diagnosed with dizziness, hematoma and contusion of the forehead and acute post-traumatic headache as a result of the impact caused by the door. Upon discharge he was prescribed several medications."  (Docket No. 65, ¶¶ 9, 15).  His maladies continued for months afterwards and he often complained to his supervisors about the injuries he suffered.

As to the identity of the alleged tortfeasor, Textron, the Court finds Plaintiff had ample time to discover its identity and failed to use due diligence in this regard.  As both the Complaint and the First Amended Complaint make clear, Plaintiff worked for Hyannis for 12 years before to the accident and he was well aware of the fact that the aircraft was a Cessna 402 and its tail number, as these two facts were specifically mentioned in those pleadings.

As to the cause of the accident, Plaintiff alleged that Textron's "product liability caused Plaintiff to be injured." (Docket No. 65, ¶ 54).  Therefore, Plaintiff was clearly on notice that he had suffered an injury and what caused it.  As Textron correctly argues, at that juncture, Plaintiff had more than sufficient information to easily ascertain Textron's identity.

In fact, the Court took up this exercise on its own.  It typed "Cessna 402" and the tail number of the aircraft, N7037E, in Google.  The second result that came up was the FAA's web page, with all the relevant information on this particular aircraft. See https://registry.faa.gov/AircraftInquiry/Search/NNumberResult?nNumberTxt=7037E. A further input of "Cessna Aircraft" in the same Google page leads directly to Textron Aviation.  Two searches on Google for a few minutes was the time that it took the Court to ascertain the identity of  the original manufacturer and owner of the aircraft with the same information that Plaintiff had when the accident occurred.  Thus, the Court cannot accept Plaintiff's lack of diligence disguised as a convenient excuse that he did not know the identity of the manufacturer when a minimum amount of diligence would have timely revealed it. "The key inquiry under this prong of the knowledge requirement is whether plaintiff knew or with the degree of diligence required by law would have known whom to

sue." Kaiser v. Armstrong World Indus., Inc., 872 F.2d 512, 516 (1st Cir.1989).    It is evident that Plaintiff knew the make of the aircraft and could have easily obtained the necessary information to timely bring Textron into this lawsuit and failed to do so. His argument that his "frame of mind with his injury" was not in finding out the manufacturer of the door but rather in complying with his employer's requirements is belied by his duty to exercise due diligence under Puerto Rico law compared with the minimum effort with which he could have found the details.

Compounding Plaintiff's predicament is that he admits that he allegedly learned of Textron's identity in July, 2021, but he did not seek leave to amend the complaint at that time.   Instead, Plaintiff inexplicably waited an additional eight (8) months to do so.  The Court cannot excuse such lax attitude.  See Fragoso v. López, 991 F.2d 878, 887 (1st Cir. 1993) (allowing dismissal of claim when plaintiff provided no credible basis for expiration of prescriptive period).

Plaintiff's only ray of hope lies if the claims against Textron could relate back pursuant to Fed. R. Civ. P. 15.   Textron avers they do not, insofar as the original claim must (1) assert a claim or defense that arose out of the conduct, transaction, or occurrence set out––or attempted to be set out––in the original pleading; (2) the party to be brought in by the amendment must receive notice of the action within the period provided by Rule 4(m) so as to not be prejudiced in asserting its defenses on the merits; and (3) that party must have known, or should have known, that it would be joined in the suit, "but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c).

Once again, the Court finds that Plaintiff has failed to meet his burden.  First, Plaintiff has proffered no evidence that it complied with prong two (2), that is, that

Textron received notice of the action within the 90-day period prescribed under Fed. R. Civ. P. 4(m).   Second, being brought into the case five (5) years after the accident (and many more since the aircraft was manufactured) the Court finds Textron would indeed be prejudiced if called upon to defend this case on the merits at this late juncture. See Young v. Lepone, 305 F.3d 1, 17 (1st Cir. 2002)  ("In our view, lack of notice and unfair prejudice go hand in hand.... That prejudice is obvious: it is the prejudice suffered by one who, for lack of timely notice that a suit has been instituted, must set about assembling evidence and constructing a defense when the case is already stale"); Nelson v. Cnty. of Allegheny, 60 F.3d 1010, 1015 (3d Cir. 1995) ("Although the relation-back rule ameliorates the effect of statutes of limitations, it does not save the claims of complainants who have sat on their rights").

Having found that one of the three (3) elements is not met, the Court's analysis ends here. Id., at 1014 (all three conditions specified in Rule 15(c)(3) must be satisfied). The claims bought against Textron are time-barred and do not relate back.

In sum, the Court finds that the claims against Textron are time-barred and do not relate back.  Consequently, the Court does not reach Textron's additional arguments as to the impermissible punitive damages claim, and Plaintiff's improper pleading tactics. These additional arguments are moot as to Textron in light of the Court's holdings today.

## CONCLUSION

On more than one occasion, the First Circuit has said that "the law ministers to the vigilant not to those who sleep upon perceptible rights." Pineda v. Whitaker, 908 F.3d 836, 842 (1st Cir. 2018).  This is one of those cases.  The Court today finds that it has no jurisdiction to hear Plaintiff's claims, and if it did, the claims would be time barred.

Erasto Román Mercado v. Hyannis Air Services, Inc., et al.
Opinion and Order
Civil No. 20-1228 (CVR)
Page 24

_____

For the above-mentioned reasons, co-Defendants Textron's Motion to Dismiss (Docket No. 91) is GRANTED.  All claims against Textron are hereby DISMISSED WITH PREJUDICE.

Partial Judgment shall be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, on this 15th day of November, 2022.

S/CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ RIVE
UNITED STATES MAGISTRATE JUDGE